IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JUSTIN WRIGHT #1949550 | § | |
| VS. | § | CIVIL ACTION NO. 6:21cv280 |
| TDCJ-CID DIRECTOR, et al. | § | |

<u>REPORT AND RECOMMENDATION</u>
<u>OF THE UNITED STATES MAGISTRTE JUDGE</u>

Plaintiff Justin Wright, an inmate of the Texas Department of Criminal Justice (TDCJ), *pro se*, filed this complaint under 28 U.S.C. § 1983 complaining of alleged violations of his constitutional rights in prison. The lawsuit was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Before the Court is the motion by Defendant Shawn McGee for summary judgment. (Dkt. #79.) McGee, who is the only Defendant who has been successfully served with process in this case (*see* Dkt. #86), filed the motion on June 10, 2022.  Despite being granted an extension of time to do so, Plaintiff did not respond to Defendant McGee's motion. (*See* Dkt. #93.) After the expiration of his time to respond, Plaintiff filed a motion to voluntarily dismiss his claims against Defendant McGee. (Dkt. #106.) For the reasons explained below, the undersigned recommends that Plaintiff's motion be denied, Defendant McGee's motion be granted, and that Defendant McGee be granted summary judgment. Because the same basis for summary judgment also applies to Plaintiff's claim against the State Classification Committee or its members, summary judgment on that claim is also recommended.

## I. Background

Plaintiff has pleaded his claims in three separate documents in the record of this case: (1) his original complaint filed July 20, 2021 (Dkt. #1); (2) a proposed amended complaint filed April 22, 2022 (Dkt. #55); and (3) his amended complaint filed May 23, 2022 (Dkt. #71.) Ordinarily, "an amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). That is why, in granting Plaintiff's motion to amend, the Court expressly instructed him to "explain in detail how and when his constitutional rights were allegedly violated" and to "comprehensively set forth all the claims Plaintiff intends to pursue" without reference to his original complaint. (Dkt. #60 at 1–2.) In this case, however, Plaintiff's amended complaint presents a statement of claim totaling less than nine lines of text that is quite sparse on details and does not even provide dates for any of the alleged facts. (Dkt. #71 at 4.) In the interests of judicial economy, for the purposes of Defendant McGee's pending motion only, the Court will therefore consider the amended complaint in the context of the more fulsome presentation of alleged facts in the original complaint and the proposed amended complaint.

Defendant McGee answered the original complaint on March 23, 2022, asserting Plaintiff's failure to exhaust administrative remedies as one of his affirmative defenses. (Dkt. #39 at 2.) On June 10, 2022, he filed both an answer to Plaintiff's amended complaint and the pending motion for summary judgment. (Dkt. ##78, 79.)

Plaintiff's claims arise from an apparent stabbing by a fellow inmate in February 2020, while he was being escorted through the Beto Unit of the TDCJ by Patrice Petty. (Dkt. #55 at 2.) He alleges that he had been in protective custody since November 2019 because gang members

had "gained access to his familys [sic] personal information [a]nd were trying to harm Plaintiff." (*Id.* at 1.) On the day in question, he was on his way to his assigned housing in the south side of the unit, but he alleges that Petty detoured through general population in the north side, where his life was in danger and where he was stabbed in the face "with an ice pik [sic] like object." (*Id.* at 2.)

Plaintiff's allegations against Defendant McGee are few. In the original complaint, Plaintiff listed McGee as a Defendant for "oppressively, knowingly, intentionally extracting information from me and then labeling me a 'snitch,' causing me injury." (Dkt. #1 at 3.) In the statement of claim, he alleged that "Officer lieutenant Mcgee extracted information from me and then labled [sic] me a snitch right before I got stabbed." (*Id.* at 4.) Plaintiff did not mention McGee at all in the proposed amended complaint except to say that he was acting under color of state law. (Dkt. #55 at 1.) In the amended complaint, Plaintiff again states that his basis for suit against McGee is that he "labeled Plaintiff a snitch after extracting information from Plaintiff," and alleges in his statement of claim that "Defendant Shawn Mcgee labled [sic] Plaintiff a snitch after extracting information from Plaintiff, about illegal things between officers and inmates." (Dkt. #71 at 3–4.)

## II. Defendant McGee's Motion

Defendant McGee first argues that, although Plaintiff filed grievances about the alleged stabbing, he never included any complaint about McGee's alleged actions, and his grievances would not have alerted administrators to McGee's alleged conduct. (Dkt. #9 at 4–6.)

Next, McGee asserts that any claims against him for money damages in his official capacity are barred by the Eleventh Amendment and that Plaintiff has not established that he is entitled to any prospective injunctive relief from McGee. (*Id.* at 6–8.)

Finally, McGee argues that Plaintiff cannot prove that he is liable for failure to protect Plaintiff and that any such liability was not clearly established as required to overcome McGee's qualified immunity. (*Id.* at 8–10.)

## III. Legal Standards

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Tex. Instruments*, 100 F.3d at 1179.

## IV. Discussion and Analysis

Congress enacted the Prison Litigation Reform Act (PLRA) in 1996, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). It is well-settled that inmates must exhaust any and all administrative remedies before proceeding in federal court. *See Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012) (explaining that pre-filing exhaustion is both mandatory and non-

discretionary). The purpose of the prison exhaustion requirement is to "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." *See Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009); *see also Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013) (explaining that the primary purpose of a grievance is to give prison officials fair opportunity to address the problem that will later form the basis of the lawsuit); *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (interpreting the exhaustion requirement in light of its purposes, which "include the goal of giving officials time and opportunity to address complaints internally.") (internal quotations and citation omitted).

The exhaustion provision was unanimously upheld by the Supreme Court in *Booth v. Churner*, 532 U.S. 731 (2001). The Supreme Court subsequently held that exhaustion is mandatory, and that the requirement will not be excused when an inmate fails to properly exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Proper exhaustion means that an inmate must not only pursue all available avenues of relief but must also comply with all administrative deadlines and procedural rules. *Id.* at 90–91. The Fifth Circuit has reiterated the principle that "[p]re-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez*, 702 F.3d at 788.

The Supreme Court elaborated further about the exhaustion requirement in *Jones v. Bock*, 549 U.S. 199 (2007). The Court explained that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. The Fifth Circuit has explained the procedures to be followed with regard to claims of failure to exhaust:

> As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA. When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.

*Dillon v. Rogers*, 596 F.3d 260, 272–73 (5th Cir. 2010). A prisoner's failure to exhaust certain claims before filing suit in federal court is fatal to those unexhausted claims only. *See Jones*, 549 U.S. at 924 ("There is no reason failure to exhaust on one [claim] necessarily affects any other.").

Defendant McGee moves for summary judgment on the basis that Plaintiff has not exhausted his administrative remedies. Specifically, McGee asserts that even though Plaintiff grieved the stabbing generally, the grievance did not assert any action or inaction by McGee as he now alleges. In support of his position, McGee has filed all Plaintiff's grievance records from January 1, 2020, through November 12, 2021. (Dkt. #79-2.) Those records confirm that none of Plaintiff's several institutional reports about the stabbing or generally about being in danger included any reference to Defendant McGee or identified being pressed for information and "labeled a snitch" by any officer as a motivating factor in his stabbing. (*See* Dkt. 79-2 at 3–4, 10, 46–47, 50–51, 112–115.)

The PLRA does not require that every civil defendant be personally named in a prison grievance to satisfy the exhaustion requirement. *Jones*, 549 U.S. at 218. In other words, "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219. But that does not give prisoners a free pass to spiral a single exhausted grievance into multiple tangential civil rights claims. "[T]he grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and . . . will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem." *Bisby*, 342 F. App'x at 972 (quoting *Johnson*, 385 F.3d at 522). Accordingly, the TDCJ Step 1 Offender Grievance Form, including the form Plaintiff used to complain about the stabbing, instructs the grieving inmate to "state who, what, when, [and] where." (*See* Dkt. 79-2 at 3.) The "typical claim-by-claim approach" applies to the

exhaustion requirement and dictates the dismissal of unexhausted claims from a lawsuit even if other claims are exhausted. *Jones*, 549 U.S. at 224.

Here, Plaintiff's grievances would have alerted authorities to his claim of generally being in danger and to Petty's negligent or intentional role in his stabbing. (*See*, *e.g.*, Dkt. #79-2 at 3 ("Officer Petty the move lady set me up to get killed.").) But the grievances would not have apprised anyone of his claim about being labeled a snitch or of any connection between that event and the stabbing. Accordingly, Plaintiff failed to exhaust his claim against Defendant McGee, and McGee is entitled to summary judgment on that basis.

Because Plaintiff's claims against Defendant McGee must be dismissed for failure to exhaust administrative remedies, the Court need not address the merits of Plaintiff's claims against him. Moreover, the record established by Defendant McGee equally benefits any defendant Plaintiff could name whose alleged actions were not fairly included in his grievances. The Fifth Circuit has held that when a defending party establishes that the plaintiff has no cause of action, this defense also inures to the benefit of non-answering defendants. *Wright v. Cerliano*, No. 6:19-CV-386, 2020 WL 2758789, at *2 (E.D. Tex. Apr. 20, 2020) (citing *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001); *Young v. Isola*, 708 F. App'x 152 (5th Cir. 2017)), *report and recommendation adopted*, No. 6:19-CV-00386, 2020 WL 2754756 (E.D. Tex. May 27, 2020). "The policy rationale for this [result] is that it would be incongruous and unfair to allow some defendants to prevail, while not providing the same benefit to similarly situated defendants." *Spoon v. City of Galveston, Tex.*, No. 3:17-CV-00120, 2018 WL 6246693, at *4 (S.D. Tex. Nov. 29, 2018).

Plaintiff's amended complaint names the State Classification Committee (SCC) as a defendant for having "denied Plaintiff a unit transfer for his safety after requested by the warden after warden's investigation." (Dkt. #71 at 3.) But the SCC "is an agency of the State of Texas and

thus immune from suit under 42 U.S.C. § 1983." *Rodriguez v. Windham Educ. Dep't*, No. 6:16cv1398, 2017 WL 2569720, at *2 (E.D. Tex. June 13, 2017) (citing *Clark v. Strong*, No. 5:06cv179, 2006 WL 3446382 (E.D. Tex., November 27, 2006), and *Pete v. Metcalfe*, 8 F.3d 214, 216 (5th Cir. 1993)). The undersigned is contemporaneously recommending dismissal by separate Report and Recommendation of the SCC on that basis.

But even if the Court construes Plaintiff's claim to be against the members of the committee instead of the committee itself (or if Plaintiff intends to assert such a claim expressly, as indicated in his pending motion seeking the SCC members' names, dates of birth, and addresses (Dkt. #100)), none of Plaintiff's relevant grievances complain about their failure to approve a unit transfer prior to his assault. He claimed in his grievance documents that he "was still under OPI investigation" from a previous complaint when the attack occurred, and that the incident happened because "Petty the move lady set me up to get killed." (Dkt. #79-2 at 3, 46.) He asserted that he "was supposed to be housed on the south side of the unit" and blamed the stabbing on her "detour" that took him to the north side. (*Id.* at 50, 112–17.) The only mention of the SCC in any of the grievance documents is in the official response indicating that the "SCC denied the OPI" after Plaintiff had already been transferred to another unit following the attack.[1] (*Id.* at 4, 115.) There is nothing in Plaintiff's grievances that would alert any prison authorities to any alleged error or indifference by the SCC or its members as a cause of his stabbing. Accordingly, Plaintiff failed to exhaust his administrative remedies against any SCC defendants, and they should also be granted summary judgment on any claims against them.

---

[1] Plaintiff's grievance, which he submitted after he moved to the Polunsky Unit, erroneously states that the attack happened on February 26. (Dkt. #79-2 at 3.) Contemporaneous investigation and medical records, including dated photographs taken of Plaintiff's injury, clearly establish that the incident in question occurred on February 19, 2020. (Dkt. #79-2 at 9, 19–26; Dkt. #79-3 at 6; Dkt. #70-5 at 6, 11–15.) Plaintiff was moved to the Polunsky Unit on February 27, 2020. (Dkt. #79-2 at 117.)

**V. Plaintiff's Motion to Dismiss**

Federal Rule of Civil Procedure 41 governs dismissal of actions. Plaintiff cannot unilaterally dismiss his claim against McGee under Rule 41(a)(1) because McGee has answered his amended complaint and has filed a motion for summary judgment. Further, Plaintiff has not submitted a stipulation to the dismissal signed by Defendant McGee. Therefore, Plaintiff may only dismiss his claim against McGee pursuant to Rule 41(a)(2), which states in relevant part:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Fed. R. Civ. P. 41(a)(2) (emphasis added).

The Fifth Circuit has explained that, "as a general rule, motions for voluntary dismissal should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317 (5th Cir. 2002). The mere fact that a plaintiff "may gain a tactical advantage by dismissing its suit without prejudice and refiling in another forum is not sufficient legal prejudice." *Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 299 (5th Cir. 2016) (internal quotation omitted). "The purpose of Rule 41(a)(2) is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." 9 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2364 (4th ed. October 2020 update) (internal quotation omitted). Absent a showing of plain legal prejudice or other "evidence of abuse by the movant," the court should generally grant a Rule 41(a)(2) motion for voluntary dismissal. *Elbaor*, 279 F.3d at 317.

Courts have considered a number of factors in determining "plain legal prejudice." In *Elbaor*, the Fifth Circuit noted, but did not adopt, the Eighth Circuit's examination of factors

10

related to the issue of prejudice to the non-movant:

> We consider the following factors when determining whether a district court abused its discretion in denying  a Rule 41(a)(2) motion: (1) the defendant's effort and the expense involved in preparing for trial, (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, (3) insufficient explanation of the need to take a dismissal, and (4) the fact that a motion for summary judgment has been filed by the defendant.

*Elbaor*, 279 F.3d at 317 n.3 (quoting *Witzman v. Gross*, 148 F.3d 988, 992 (8th Cir. 1998)). In *Manshack v. Southwestern Elec. Power Co.*, the Fifth Circuit highlighted that "[t]he fact that additional expense will be incurred in relitigating issues in another forum will not generally support a finding of 'plain legal prejudice.'" 915 F.2d 172, 174 (5th Cir. 1990).

The Fifth Circuit has held that it is important, in assessing prejudice, to consider the stage at which the motion to dismiss is asserted. *See Hartford Accident & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 352, 360 (5th Cir. 1990). Therefore, "[w]here the plaintiff does not seek dismissal until a late stage and the defendants have exerted significant time and effort, the district court may, in its discretion, refuse to grant a voluntary dismissal." *Id.*

Defendant McGee answered Plaintiff's original complaint on March 23, 2022. (Dkt. #39.) Plaintiff reiterated his claims against Defendant McGee in a proposed amended complaint on April 22, 2022 (Dkt. #55), and in the amended complaint he filed on May 23, 2022. (Dkt. #71.) McGee served Plaintiff with initial disclosures and answered the amended complaint. (Dkt. ##53, 78.) He has also been required to provide information about the whereabouts of one of his co-defendants and to respond to a motion for preliminary injunction (Dkt. ##45, 46, 62, 69.) And, perhaps most importantly, he has filed a motion for summary judgment, for which his counsel gathered, reviewed, and compiled almost 150 pages of evidence, including several affidavits. (Dkt. #79.) For the reasons explained above, that effort has established that Defendant McGee is entitled to a judgment in his favor.

Plaintiff waited until Defendant McGee's summary judgment was filed and ripe and review was under way before attempting to voluntarily terminate McGee as a Defendant. (Dkt. #106.) He offers no explanation for the new desire to terminate McGee or for waiting so long to reach that decision. The most plausible explanation is that Plaintiff is motivated by a desire to avoid an unfavorable ruling on Defendant McGee's motion. Plaintiff's delay in seeking the nonsuit and lack of explanation for it, weighed against the significant efforts by Defendant McGee to defend against Plaintiff's claims and move for a judgment in his favor, dictate against granting Plaintiff's motion.

## VI. Conclusion

A review of summary judgment evidence in this case, viewed in the light most favorable to Plaintiff, shows that the evidence before the Court could not lead to different factual findings and conclusions. In other words, summary judgment for Defendant McGee and for any SCC defendants is appropriate.

<u>RECOMMENDATION</u>

Accordingly, the undersigned recommends that Defendant McGee's motion for summary judgment (Dkt. #79) be granted without prejudice and that summary judgment be entered against Plaintiff on his claims against Defendant McGee, the State Classification Committee, and its members**.** The undersigned recommends that Plaintiff's motion to voluntarily dismiss his claim against Defendant McGee (Dkt. #106) be denied.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations

and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 19th day of September, 2022.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE